UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ELEANOR C. WALSH,

                        Plaintiff,

                                                MEMORANDUM & ORDER
            -against-                           14-CV-0205(JS)

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                        Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:          Charles E. Binder, Esq.
                        Law Offices of Harry J. Binder and
                          Charles E. Binder, P.C.
                        60 East 42nd Street, Suite 520
                        New York, NY 10165

For Defendant:          Candace Scott Appleton, Esq.
                        United States Attorney's Office
                        271 Cadman Plaza East, 7th Floor
                        Brooklyn, NY 11201


SEYBERT, District Judge:

        Plaintiff Eleanor C. Walsh ("Plaintiff") commenced this

action pursuant to Section 205(g) of the Social Securities Act, as

amended, 42 U.S.C. § 405(g), challenging defendant the

Commissioner of Social Security's (the "Commissioner") denial of

her application for disability insurance benefits. Presently

before the Court are Plaintiff's and Commissioner's motions for

judgment on the pleadings (Docket Entries 10, 13.) For the

following reasons, Plaintiff's motion is GRANTED, Commissioner's

motion is DENIED, and this matter is REMANDED to the Commissioner

for further consideration in accordance with this Memorandum and Order.

BACKGROUND

Plaintiff filed for Social Security Disability benefits on May 10, 2012, alleging that she has been disabled since June 29, 2011. (R. at 154-155.) Plaintiff attributes her disability to: depression, chronic obstructive pulmonary disease ("COPD"), high blood pressure, hypertension, and diabetes. (R. at 173.)

After her application for Social Security Disability benefits was denied on September 19, 2012, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (R. at 107-114; 123-24.) The hearing took place on June 7, 2013 before ALJ April M. Wexler. (R. at 54-87.)

On June 14, 2013, the ALJ issued her decision finding that Plaintiff is not disabled. (R. at 37-48.) On July 22, 2013, Plaintiff petitioned the Appeals Counsel to review the ALJ's decision, but on November 13, 2013, the Appeals Council denied Plaintiff's request. (R. at 1-7, 36.)

The Court's review of the administrative record in this case will proceed as follows: first, the Court will summarize the relevant evidence presented to the ALJ; second, the Court will review the ALJ's findings and conclusions; third, the Court will summarize the additional evidence submitted to the Appeals

Council; and _finally_, the Court will review the Appeals Council's decision.

I.  Evidence Presented to the ALJ

    A.  Non-Medical Evidence

Plaintiff was born in 1953. (R. at 154.) She completed high school and attended some college courses. (R. at 60.) Plaintiff previously held jobs as a technician, a kitchen helper, and a childcare attendant. (R. at 83.) She is married and lives with her husband and their twenty-five-year-old son. (R. at 60.)

Plaintiff testified that she stopped working in 2011 after she was asked to leave the school district she worked for, but said she "probably" would have continued working there if she had not been asked to leave. (R. at 64-65.) When asked why she was disabled, Plaintiff testified as follows: "I don't know, it's just nothing sticks, nothing--you know, I sleep a lot, just don't have the gumption anymore, you know." (R. at 65.) Plaintiff also testified that she can no longer work because: (1) she is easily distracted, (2) she has trouble remembering names and dates, and (3) she does not get enough sleep. (R. at 71-72.)

Plaintiff has asthma, which causes her to "get very out of breath" and have to sit down. (R. at 68-69.) She has diabetes, which is controlled with non-insulin medication and diet, (R. at 69-70), and she suffers from depression, (R. at 72). With respect to her depression, Plaintiff testified that she experiences

sleeplessness, always feels tired, and feels worthless. (R. at 72.) Plaintiff is typically by herself during the day. (R. at 78.) She will "[g]et up, have breakfast, load . . . [and] run the dishwasher"; then shower and dress herself without issue. (R. at 78.) Plaintiff goes to the store and bank, visits her mother, and goes to dinner approximately once a week. (R. at 80.) Plaintiff also dusts, watches television, and reads books from the library. (R. at 80.) Although Plaintiff has difficulty breathing and cannot push the vacuum or do the laundry, she testified that she can carry five to ten pounds at a time and walk for fifteen minutes before wanting to sit down. (R. at 75-77.)

Plaintiff testified that she used to smoke two to three packs of cigarettes per day, but now smokes only one to two cigarettes per day. (R. at 75.) Plaintiff further testified that on June 12, 2013, she was scheduled to have a mass surgically removed from her lung. (R. at 73.)

B. <u>Medical Evidence</u>

1. <u>Amir Herman, D.O.</u>

On September 19, 2012, Plaintiff saw Dr. Amir Herman. (R. at 286-88.) She complained of fatigue and asked to be evaluated for disability. (R. at 286.) Dr. Herman diagnosed Plaintiff with anxiety, chronic depressive personality disorder, diabetes, mixed hyperlipidemia, hypertension, a vitamin D deficiency, atrial fibrillation, urge incontinence, chronic airway

obstruction, and obesity. (R. at 287.) On September 25, 2012, Plaintiff visited Dr. Herman and complained that she continued to feel tired all the time, felt depressed, and experienced dizziness upon walking or standing too quickly. (R. at 289.) An examination revealed an irregular heart beat and murmur. (R. at 290.) Plaintiff was prescribed Lexapro and on October 9, 2012 she reported feeling "20% better." (R. at 290, 292.)

On October 17, 2012, Dr. Herman completed a Multiple Impairment Questionnaire about Plaintiff. (R. at 296-303.) Dr. Herman reported treating Plaintiff since 1998. (R. at 296.) He indicated that Plaintiff's prognosis was "poor" and diagnosed her with COPD, atrial fibrillation, type 2 diabetes, hypertension, and hyperlipidemia. (R. at 296.) Dr. Herman's clinical findings included: chronic fatigue, weakness, and shortness of breath—symptoms, which were "greatly exacerbated by increased physical activity." (R. at 296.) Dr. Herman explained that Plaintiff's most recent EKG supported his diagnosis and stated that the EKG showed persistent atrial fibrillation and an arrhythmia that was life-threatening if not properly monitored and treated. (R. at 297.) Dr. Herman rated Plaintiff's level of fatigue as moderately severe and opined that in an eight-hour workday Plaintiff could only sit, stand, and walk between zero and one hour per day. (R. at 298.) He indicated that it would be necessary or medically recommended for Plaintiff not to sit continuously in a work

setting. (R. at 298.) Dr. Herman opined that Plaintiff could lift and carry up to five pounds occasionally but was significantly limited in her ability to engage in repetitive reaching, handling, fingering or lifting, since such activities could exacerbate Plaintiff's shortness of breath and fatigue. (R. at 299.) Dr. Herman also noted that Plaintiff was moderately limited in her ability to grasp, turn, and twist objects and using her fingers and hands for fine manipulations. (R. at 299-300.)

Dr. Herman opined that Plaintiff's symptoms would increase if she was placed in a competitive work environment. (R. at 300.) He noted that emotional factors did not contribute to the severity of Plaintiff's symptoms and limitations. (R. at 301.) He also noted that Plaintiff was incapable of working in a "low stress" environment. (R. at 301.) Finally, Dr. Herman noted that Plaintiff should avoid work in a job with fumes and gases, extreme temperatures, humidity, and dust, as well as, jobs that require pushing, pulling, kneeling, bending, or stooping. (R. at 302.)

2. Robert Locastro, D.P.M.

In 1998, Dr. Locastro began treating Plaintiff. (R. at 314.) Although his treatment notes are not part of the certified record, on September 14, 2012, he completed a lower-extremities impairment questionnaire. (R. at 314-21.) Dr. Locastro reported seeing Plaintiff every eight to ten weeks since 1998 and diagnosed Plaintiff with: diabetic neuropathy, hammer toes, metatarsalgia,

and mycotic nails.  (R. at 314.)  Dr. Locastro's clinical findings included: a limited range of motion in Plaintiff's ankle joints, tenderness of the feet, mild swelling in the balls of the feet, joint deformities due to hammer toes, mild instability, sensory loss, and reflex changes.  (R. at 314-15.)  Plaintiff's primary symptoms were numbness, burning, and tingling in the balls of her feet.  (R. at 316.)  Dr. Locastro noted that (1) the pain interfered with her ability to ambulate, (2) that Plaintiff cannot climb stairs without a handrail, but (3) Plaintiff did not require any assistive devices.  (R. at 316-17.)

Dr. Locastro opined that Plaintiff could regularly carry out activities of daily living without assistance.  (R. at 317.) He also opined that she can sit for seven hours in an eight-hour workday and stand or walk for up to one hour.  (R. at 317.)  Dr. Locastro stated that Plaintiff's symptoms frequently interfered with her attention and concentration, but that she was capable of low stress work.  (R. at 318.)  He further opined that Plaintiff would need to take unscheduled breaks fifteen minutes out of every hour at work to rest.  (R. at 319.)

### 3.   The Hearing Center of Long Island

On September 4, 2012, Plaintiff visited the Hearing Center of Long Island and was examined by Cheryl Leister Senzer, an audiologist.  (R. at 361-68.)  Dr. Leister opined that Plaintiff had moderate to severe sensorineural hearing loss bilaterally and

noted that Plaintiff may have difficulty with soft speech in noisy backgrounds and in groups. (R. at 361, 365.) Dr. Leister reported that Plaintiff's speech discrimination scores were very good bilaterally. (R. at 361.) She also noted that Plaintiff complained of periodic tinnitus. (R. at 366.) Testing revealed type A tympanograms indicating normal middle ear functioning bilaterally. (R. at 361.) Hearing aids were prescribed to Plaintiff following testing. (R. at 305-06, 361.)

### 4. Andrea Pollack, D.O.

On June 19, 2012, Andrea Pollack, D.O., a consultative examiner, performed an internal medicine examination on Plaintiff. (R. at 236-40.) Plaintiff told Dr. Pollack that she suffered from the following ailments: diabetes since 1985, atrial fibrillation since 1998, asthma and emphysema since 1990, and high blood pressure. (R. at 236.) Plaintiff also reported experiencing heart palpitations every two months, lasting two to three minutes and told Dr. Pollack that she does not use an inhaler or nebulizer, and she is not on oxygen. (R. at 236.) Plaintiff also reported being diagnosed with an overactive bladder twenty years ago. (R. at 236.) She sees a urologist and has occasional accidents but does not wear pads. (R. at 236.) Lastly, Plaintiff reported having depression for over a year. (R. at 236.) She is on medication and reported no current suicidal thoughts. (R. at 236.)

Plaintiff reported that she was able to cook five to six times per week, clean once per week, do laundry four to five times per week, shop once or twice a week, and shower and dress herself daily. (R. at 237.) She also reported that she watched television, read, and socialized with friends. (R. at 237.)

Dr. Pollack noted that Plaintiff appeared to be in no acute distress; had a normal gait; could walk on heels and toes without difficulty; was able to squat; had a normal stance; used no assistive devices; and did not need help changing for the exam or getting on and off the examination table. (R. at 238.) A full examination of Plaintiff revealed no abnormalities. (R. at 238-39.) Dr. Pollack diagnosed Plaintiff with: diabetes, atrial fibrillation, hypertension, asthma, emphysema, an overactive bladder, depression, and decreased visual acuity of the right eye. (R. at 239.) Dr. Pollack opined that Plaintiff should avoid smoke, dust, and known respiratory irritants, and activities that require heavy exertion. (R. at 239.) She also stated that Plaintiff was moderately restricted in her ability to lift, carry, push, pull, and mildly restricted to walk and climb stairs. (R. at 239.) Lastly, Dr. Pollack stated that Plaintiff was restricted in activities which required fine visual acuity of the right eye. (R. at 239.)

     5.   <u>Kathleen Acer, Ph.D.</u>

On June 19, 2012, Kathleen Acer, Ph.D., a psychologist, saw Plaintiff for an evaluation. (R. at 232-35.) Plaintiff reported that she lives with her husband and their twenty-five-year-old son. (R. at 232.) Plaintiff stated that she was able to cook, clean, shop, drive, manage finances, and do laundry. (R. at 234.) Plaintiff reported that she has good relationships with her family and spends the day making phone calls, running errands, cooking, and cleaning. (R. at 234.) She also stated that she completed one year of college and worked for the last eleven years as a kitchen helper, but that she stopped working due to physical problems. (R. at 232.)

Plaintiff explained that she experienced episodic "down moods" and had been taking Wellbutrin for four years. (R. at 232.) She also reported weight gain, irritability, feelings of loneliness, fatigue, trouble focusing, and nervous moods. (R. at 232.)

After an examination, Dr. Acer noted that Plaintiff was cooperative and displayed a normal mood, clear sensorium, and full range of affect. (R. at 233.) Dr. Acer also noted that Plaintiff was fully oriented and had coherent, goal-directed thought processes. (R. at 233.) Plaintiff was able to recall three out of three objects immediately and after a five minute delay. (R. at 233.) Plaintiff also displayed average intellectual skills and displayed good insight and judgment. (R. 233.)

Dr. Acer diagnosed Plaintiff with dysthymic disorder and opined that Plaintiff's symptoms were consistent with "long-standing mild psychiatric issues." (R. at 234.) Dr. Acer specifically opined that: (1) Plaintiff's psychiatric issues were not significant enough to interfere with her ability to function on a daily basis; (2) Plaintiff could follow and understand simple directions and instructions, could perform tasks, and maintain attention, concentration, and a schedule; but (3) Plaintiff could have difficulty dealing with stress and adequately relating to others. (R. at 234.)

## II. Decision of the ALJ

After reviewing the evidence in the record, the ALJ issued her decision on June 14, 2013, finding that Plaintiff is not disabled. (R. at 37-48.) The ALJ concluded that while "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of the symptoms [were] not entirely credible." (R. at 47.)

The ALJ concluded that Plaintiff has the residual functional capacity to perform medium work as defined in 20 C.F.R 404.1567(c), "that allows for simple routine tasks involving no more than simple, one or two step instructions and simple work related decisions." (R. at 43-44.) "Medium work" means that

Plaintiff can sit, stand, and walk for six hours in an eight-hour workday, to lift or carry twenty-five pounds frequently and fifty pounds occasionally. (R. at 44-45.) However, the ALJ concluded that Plaintiff "must avoid even moderate exposure to dangers such as machinery and heights and concentrated exposure to dusts, odors, fumes and gases and no jobs that require fine hearing." (R. at 44.) The ALJ concluded that "[Plaintiff] is capable of performing her past relevant work as a Child Care Attendant . . . [which] does not require the performance of work-related activities precluded by the [Plaintiff's] residual functional capacity." (R. at 47.)

In reaching its decision, the ALJ accorded "little weight" to Dr. Herman's opinion, a treating physician, because his opinion was "not consistent with his treatment records, in which in nearly all examinations of the [Plaintiff] were unremarkable." (R. at 45.) The ALJ accorded "little weight" to the opinion of podiatrist Robert Locator because his opinion was "not supported by any treatment record, diagnostic tests or other treating physician record . . . [and was] inconsistent with the consultive examination performed on behalf of the [SSA]." (R. at 45-46.) The ALJ accorded "some weight" to the opinion of Dr. Andrea Pollack, who performed an internal medicine examination on behalf of the SSA because it was "consistent [with] the medical history provided by the [Plaintiff] and the examination in general." (R.

at 46.)  Finally, the ALJ accorded "great weight" to the opinion
of Dr. Kathleen Acer, who performed a psychiatric evaluation of
the [Plaintiff] on behalf of the SSA because it was "consistent
with the examination, in which the [Plaintiff] displayed no
significant symptoms, but reported a history of sleep disturbance,
being short-tempered, irritable, feeling somewhat down, lonely and
fatigued."  (R. at 46.)

III. The Decision of the Appeals Counsel

Plaintiff petitioned the Appeals Council to review the
ALJ's decision and submitted a letter attaching the following
documents: medical records from Huntington Hospital from July 12,
2013 through July 29, 2013; a surgical pathology report from North
Shore Long Island Jewish Laboratories, Huntington Hospital, dated
June 12, 2013; and Hospital records dated June 12, 2013.  (R. at
5.)  Plaintiff also submitted a Psychiatric/Psychological
Impairment Questionnaire dated October 26, 2013, completed by
Karen Tuckman, LCSW, to the Appeals Council.  (R. at 8-15.)

A.   Karen Tuckman, LCSW

From October 9, 2012 through February 5, 2013, Plaintiff
saw Karen Tuckman, a social worker, for depression.  (R. at 325-
29.)  Ms. Tuckman diagnosed Plaintiff with a major depressive
disorder, recurrent episodes, and generalized anxiety disorder.
(R. at 8.)  Her prognosis was "guarded" and opined that Plaintiff
could not engage in full-time, competitive work.  (R. at 8.)  Ms.

Tuckman's clinical findings with respect to Plaintiff included: poor memory, sleep disturbance, personality change, mood disturbance, emotional liability, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, feelings of guilt/worthlessness, difficulty thinking or concentrating, suicidal ideation or attempts, social withdrawal or isolation, decreased energy, obsessions or compulsions, intrusive recollections of a traumatic experience, generalized persistent anxiety, and blunt, flat, or inappropriate affect. (R. at 9.) Other clinical symptoms were constant negative ruminations centered around the loss of Plaintiff's job. (R. at 9.)

Ms. Tuckman opined that Plaintiff was markedly limited in her ability to (1) remember locations and work like procedures; (2) understand, remember and carry out simple one to two-step instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (5) sustain ordinary routine without supervision; (6) work in coordination with or proximity to others without being distracted by them; (7) complete a normal worksheet without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (8) accept instructions and respond appropriately to criticism from supervisors; (9) respond appropriately to changes

14

in the work setting; and, (10) set realistic goals or make plans independently. (R. at 10-13.) Plaintiff was moderately limited in her ability to (1) make simple work-related decisions; interact appropriately with the general public; (2) ask simple questions or request assistance; (3) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (4) maintain socially acceptable behavior and adhere to basic standards of neatness and cleanliness; (5) be aware of normal hazards and take appropriate precautions; and (6) travel to unfamiliar places or use public transportation. (R. at 12-13.)

Ms. Tuckman also noted that Plaintiff experienced episodes of deterioration or decompensation in work settings which cause her to withdraw from that situation or exacerbate her symptoms. (R. at 13.) "When Plaintiff was last employed, contact with her supervisor exacerbated her symptoms." (R. at 14.) Ms. Tuckman also noted that Plaintiff tolerated a great amount of work stress, including supervisory contact, until she was fired. (R. at 14.) Lastly, Ms. Tuckman opined that Plaintiff would be absent from work more than three times per month as a result of her impairments and that Plaintiff's depression was difficult to treat even with therapy and medication. (R. at 15.)

On November 13, 2013, the Appeals Council denied Plaintiff's appeal of the ALJ's decision. (R at 1.) The Appeals Council found that Tuckman's report did not affect the ALJ's

decision about whether Plaintiff was disabled on or before June 14, 2013, because the report was dated October 26, 2013. (R. at 2.) The Appeals thus "found no reason under [the] rules to review the Administrative Law Judge's decision." (R. at 1.) Therefore, the ALJ's decision is considered the final decision of the Commissioner. (R. at 1.)

IV. <u>This Appeal</u>

Plaintiff commenced this appeal on January 1, 2014. (Docket Entry 1.) The Commissioner filed the administrative record on April 7, 2014, and her Answer on April 21, 2014. (Docket Entries 6, 7.) On June 6, 2014, the Commissioner filed a motion for judgment on the Pleadings and on July 3, 2014, the Plaintiff filed a cross-motion for judgment on the pleadings. (Docket Entries 10, 13.) These motions are presently before the Court.

DISCUSSION

I. <u>Standard of Review</u>

In reviewing the ruling of the ALJ, this Court will not determine <u>de</u> <u>novo</u> whether Plaintiff is entitled to disability benefits. Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ. <u>See</u> <u>Jones v. Sullivan</u>, 949 F.2d 57, 59 (2d Cir. 1991). Instead, the Court must determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole or are based on an erroneous legal standard." <u>Curry v. Apfel</u>, 209 F.3d

117, 122 (2d Cir. 2000) (internal quotations marks and citation omitted), superseded by statute on other grounds, 20 C.F.R. § 404.1560. If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion." Id. (citing Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). The substantial evidence test applies not only to the ALJ's findings of fact, but also to any inferences and conclusions of law drawn from such facts. See id.

To determine if substantial evidence exists to support the ALJ's findings, this Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences may be drawn." See Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks and citation omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

A.    Eligibility for Benefits

A claimant must be disabled within the meaning of the Social Security Act (the "Act") to receive disability benefits. See Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); 42 U.S.C.

§ 423(a), (d).  A claimant is disabled under the Act when he can show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant's impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ."  Id. § 423(d)(2)(A).

The Commissioner must apply a five-step analysis when determining whether a claimant is disabled as defined by the Act.  See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); Petrie v. Astrue, 412 F. App'x 401, 404 (2d Cir. 2011).  First, the claimant must not be engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  Second, the claimant must prove that he suffers from a severe impairment that significantly limits his mental or physical ability to do basic work activities.  Id. § 404.1520(a)(4)(ii).  Third, the claimant must show that his impairment is equivalent to one of the impairments listed in Appendix 1 of the Regulations.  Id. § 404.1520(a)(4)(iii).  Fourth, if his impairment or its equivalent is not listed in the Appendix, the claimant must show that he does not have the residual functional capacity ("RFC") to perform tasks required in his

previous employment.  Id.  § 404.1520(a)(4)(iv).  Fifth, if the claimant successfully makes these showings, the Commissioner must determine if there is any other work within the national economy that the claimant is able to perform.  Id.  § 404.1520(a)(4)(v). The claimant has the burden of proving the first four steps of the analysis, while the Commissioner carries the burden of proof for the last step.  See Shaw v. Chater, 221 F.3d at 132; Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).  "In making the required determinations, the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience."  Boryk ex rel. Boryk v. Barnhart, No. 02-CV-2465, 2003 WL 22170596, at *8 (E.D.N.Y. Sept. 17, 2003) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

In the present case, the ALJ performed the above analysis and found that Plaintiff had not engaged in substantial gainful activity since June 29, 2011, and that she had the following severe impairments: depression, asthma, atrial fibrillation, and hearing loss.  (R. at 40, 42.)  The ALJ next determined that none of Plaintiff's impairments or any combination of impairments are the medical equivalent of any impairment enumerated in Appendix 1.

(R. at 42-43.)  The ALJ found that Plaintiff was capable of performing her past work as a child care attendant, as she had the RFC to perform a full range of medium work.  (R. at 47.)

The Court must now determine whether the ALJ's decision is supported by substantial evidence.  With respect to the new evidence submitted to the Appeals Council, it is deemed part of the record and will be considered by the Court when determining if there is substantial evidence to support the Commissioner's final decision.  See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) ("[w]hen the Appeals Council denies review after considering new evidence, we simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary.")

Commissioner and Plaintiff have both moved for judgment on the pleadings and each have raised several arguments in support of their respective motions.  The Court will address them in turn below.

A.    The Treating Physician Rule

Plaintiff first argues that remand is required because the ALJ did not properly apply the treating physician rule to Drs. Herman and Locastro.  (Pl.'s Br., Docket Entry 14, at 10-13.)  The Commissioner counters that the ALJ properly assigned Drs. Herman and Locastro "little weight."  (Comm'r's Reply Br., Docket Entry

16, at 3-4.)  Under the "treating physician rule," the medical opinions and reports of a claimant's treating physicians are to be given "special evidentiary weight."  Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).  Specifically, the regulation states:

> Generally, we give more weight to opinions from your treating sources . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2) (alteration in original).  When an ALJ does not accord controlling weight to the medical opinion of a treating physician, the ALJ "must consider various 'factors' to determine how much weight to give to the opinion."  Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted); see also Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008).  These factors include:

> (1) the length of the treatment relationship and frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical and laboratory findings; (4) the physician's consistency with the record as a whole; and (5) whether the physician is a specialist.

Schnetzler, 533 F. Supp. 2d at 286; see also 20 C.F.R. § 404.1527(d)(2); Halloran, 362 F.3d at 32.  To comply with the

requirements of the treating physician rule ALJ must "set forth [his] reasons for the weight [he] assigns to the treating physician's opinion." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see 20 C.F.R. § 404.1527; see also Snell, 177 F.3d at 134 (2d Cir. 1999) (explaining that "[a] claimant . . . who knows that her physician has deemed her disabled, might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.") Here, the ALJ did not violate the treating physician's rule because she articulated her reasons for giving certain doctor's opinions less weight.

With respect to Dr. Herman, the ALJ noted that while he claimed that he began treating Plaintiff in 1998, he did not provide any contemporaneous records. (R. at 45.) The ALJ also stated that Dr. Herman's opinion is inconsistent with his own medical records or any other treatment records provided to the ALJ. (R. at 45.)

With respect to Dr. Locastro, the ALJ noted that he reported the date of Plaintiff's first treatment as October 5, 1998, but "failed to provide any concurrent treatment records." (R. at 45.) The ALJ concluded that the opinion of Dr. Locastro "is not supported by any treatment record, diagnostic tests, or other treating physician record." (R. at 45.) Further, the podiatrist's opinion was inconsistent with the consultative

examination performed on behalf of the SSA, in which Plaintiff "had a normal gait, walked on heels and toes without difficulty and could squat fully." (R. at 45-46.)

After deciding that Drs. Herman and Locatro's opinions were not entitled to controlling weight, the ALJ considered the various factors, set forth in 20 C.F.R. § 404.1527, to determine how much weight to afford their opinions. (R. at 43-47.) Thus, the ALJ's decision did not violate the treating physician's rule.

B. Credibility

Plaintiff also argues that the ALJ did not properly assess Plaintiff's credibility and that "[t]he ALJ's brief credibility analysis was insufficient." (Pl.'s Br. at 14.) The Court disagrees. Here, the ALJ found that although "[Plaintiff's] medically determinable impairments could reasonably be expected to cause [his] alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . . ." (R. at 47.) As discussed below, the Court finds that there is substantial evidence in the record to support this conclusion.

The Second Circuit has held that "the subjective element of pain is an important factor to be considered in determining disability." Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984). However, "[t]he ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light

of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." McLaughlin v. Sec'y of Health, Educ. & Welfare, 612 F.2d 701, 705 (2d Cir. 1980) (alteration in original) (internal quotation marks and citation omitted). The Court will uphold the ALJ's decision to discount a claimant's subjective complaints of pain so long as the decision is supported by substantial evidence. See Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984).

Here, Plaintiff's subjective complaints were contradicted by other evidence in the record as well as Plaintiff's own testimony and behavior at the hearing. Specifically: (1) Plaintiff testified that she stopped working because they asked her to leave--not because of a physical impairment (R. at 65); (2) Plaintiff testified that she was able to perform a wide range of activities, including: cooking, cleaning, bathing, shopping, going to the post office and bank, and driving her mother to the doctor. (R. at 47); and (4) despite claims of asthma, Plaintiff testified that she has never been hospitalized or gone to the Emergency Room for her asthma, (R. at 47). Such contradictions constitute substantial evidence supporting the ALJ's decision to discount Plaintiff's subjective complaints of pain. See, e.g., Vargas v. Astrue, No. 10-CV-6306, 2011 WL 2946371, at *15 (S.D.N.Y. July 20, 2011); Shriver v. Astrue, No.

07-CV-2767, 2008 WL 4453420, at *2 (E.D.N.Y. Sept. 30, 2008).

C. Vocational Expert Testimony

Plaintiff argues that this case should be remanded to the ALJ because the ALJ relied on flawed vocational expert testimony. (Pl.'s Br. at 16.) Specifically, Plaintiff claims the ALJ failed to present the vocational expert with a hypothetical which accurately depicted all of Plaintiff's limitations. (Pl.'s Br. at 17.)

On June 7, 2014, vocational expert, Christina Boardman testified before the ALJ. (R. at 82-86.) Ms. Boardman testified that Plaintiff's past jobs as a technician, telephone operator, kitchen helper, and childcare attendant all required medium strength. (R. at 83.) The ALJ then asked the Ms. Boardman to:

> assume a hypothetical individual of [Plaintiff's] age and education and with the past jobs you just described. And let's assume this individual is limited to medium work . . . [and] the work must be simple, routine tasks involving no more than simple one or two step instructions and simple work related decisions with few workplace changes. Must avoid even moderate exposure to dangers such as machinery and heights and concentrated exposure to dust, odors, fumes, gases and pulmonary irritants. And must avoid jobs that require fine hearing. Could such a hypothetical individual perform any of the claimant's past work?

(R. at 83-84.) Ms. Boardman stated that the hypothetical individual could not perform Plaintiff's past work. (R. at 84.)

Plaintiff argues that the ALJ concluded that Plaintiff could perform her past work as a child care attendant based on Ms. Boardman's testimony. (Pl.'s Br. at 16.) However, Ms. Boardman testified that a person with the restrictions listed above, would <u>not</u> be able to perform any of the Plaintiff's past work. (R. at 84-85.)

Plaintiff argues that this case should be remanded based on the Second Circuit's decision in <u>Aubeuf v. Schweiker</u>, holding that a "vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." <u>Aubeuf v. Schweiker</u>, 649 F.2d 107, 114 (2d Cir. 1981). This case is distinguishable from <u>Aubeuf</u>, however, because the ALJ did not reach her conclusion that Plaintiff could work as a childcare specialist based on the vocational expert's testimony. (R. at 84-85.) Therefore, Plaintiff's argument must be rejected.

D.   <u>New Evidence Submitted to the Appeals Council</u>

Pursuant to the Code of Federal Regulations, when "new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). The Appeals Council must then "evaluate the entire record including the new and material evidence submitted if it relates to the period on or

before the date of the administrative law judge hearing decision."
20 C.F.R. § 404.970(b).

To obtain a review of new evidence, the Plaintiff must show that '"the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative."' Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at *13 (E.D.N.Y. Aug. 28, 2009) (quoting Sergenton v. Barnhart, 470 F. Supp. 2d 194, 204 (E.D.N.Y. 2007)). "Materiality" means that there must be a possibility that the new evidence would have caused the Commissioner to decide the case differently. Id. If the Appeals Council fails to consider such material evidence, the case will be remanded for further consideration in light of the new evidence. See Shrack v. Astrue, 608 F. Supp. 2d 297, 302 (D. Conn. 2009) ("Under the regulations, the Appeals Council must consider new and material evidence if it relates to the period on or before the date of the administrative law judge hearing decision. When it fails to do so, the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence.") citing Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996); 20 C.F.R. §§ 404.970(b).

Here, Plaintiff submitted a Psychiatric/Psychological Impairment Questionnaire to the Appeals Council and the Appeals

Council found that the report did not affect the ALJ's disability determination rendered on June 14, 2013, because the report was dated October 26, 2013. (R. at 2.) As a social worker, Ms. Tuckman is not considered an acceptable medical source (see 20 C.F.R. § 404.1513(a)) and her opinion cannot be afforded controlling weight. Nevertheless, her opinion is material with respect to the severity of Plaintiff's impairments. See 20 C.F.R. § 404.1513(d). Moreover, the psychiatric questionnaire submitted by Ms. Tuckman retroactively addresses the time period Plaintiff is claiming disability. (R. at 8-15.) As the Second Circuit has repeatedly held "diagnoses post-dating the relevant period may recall that a claimant 'had an impairment substantially more severe than was previously diagnosed.'" Barimah v. Comm'r, Soc. Sec. Admin., No. 01-CV-7160, 2004 WL 2216497, at *3 (E.D.N.Y. Sept. 27, 2004) (citing Lisa v. Sec'y of the Dep't of Health and Human Servs., 940 F.2d 40, 44 (2d Cir. 1991). Such evidence should be considered because it can "identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the [relevant period]." Id. at 44 (quoting Gold v. Sec'y of Health, Educ. and Welfare, 463 F.2d 38, 41-42 (2d Cir. 1972)). Further, "evidence of the severity of a claimant's condition may demonstrate that during the relevant time period, the claimant's condition was far more serious than previously thought." Sistrunk v. Colvin, No. 14-CV-3208, 2015 WL

403207, at *7 (E.D.N.Y. Jan. 28, 2015) (holding that new medical evidence dated after the decision of the ALJ was relevant to the progression of the plaintiff's symptoms).  Because Ms. Tuckman's report presented new material information, remand is warranted.  On remand the ALJ shall consider when Ms. Tuckman's questionnaire impacts her determination with respect to the severity of Plaintiff's impairments and her ability to perform work.

CONCLUSION

For the foregoing reasons, Plaintiff's motion (Docket Entry 13) is GRANTED, the Commissioner's motion (Docket Entry 10) is DENIED, and this action is REMANDED for further proceedings consistent with this Memorandum and Order.  The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Date: June 16, 2015
      Central Islip, New York